**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMAL WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02648 |
| | ) | |
| CITY OF CHICAGO, ET AL., | ) | Judge Edmond E. Chang |
| | ) | |
| Defendants. | ) | Magistrate Judge M. David Weisman |

**DEFENDANT CITY OF CHICAGO'S MOTION TO DISMISS**

The City of Chicago (the "City"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Counts V, VI, VII, and a portion of Count VIII of Plaintiff's Complaint, which assert *Monell,* state law *respondeat superior,* and indemnification claims.

**Introduction**

Plaintiff claims that the Chicago Police Officers Diblich and Ohle (the "Defendant Officers") violated his civil rights when he was arrested for possession of cannabis and ammunition during a search at an apartment he was visiting. Plaintiff was convicted for the unlawful use of a weapon by a felon. As described in their separate motion to dismiss (Dkt. 19), the Defendant Officers have challenged the allegations against them in Counts I, II, and III and the City adopts and incorporates their arguments and authorities in support of its motion to dismiss.

The City submits its motion to dismiss Counts V, VI, VII, and VIII. In Counts V and VI, Plaintiff alleges that the City is liable for a failure to train its officers and for a policy or custom of condoning officer misconduct, presumably based on the principles set forth in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978). However, Plaintiff completely fails to allege facts establishing any actual policy or failure-to-train its employees by the City, and thus ties no

1

specific policy or practice by the City to his alleged injuries. Without either of these necessary elements, Plaintiff's *Monell* claims cannot survive. Plaintiff also alleges a *respondeat superior* claim against the City in Count VII, which must fail because such liability is not recognized for claims under 42 U.S.C. § 1983 and Plaintiff has not alleged any other claims. Finally, in Count VIII, Plaintiff alleges that the City must indemnify the Defendant Officers for conduct occurring while acting within the scope of their employment. To the extent Count VIII is based on Counts I-III, this claim should be dismissed because those counts[1] do not sufficiently allege an underlying constitutional violation, as described in the Defendant Officers' motion.

## Facts

As alleged in the Complaint, on October 28, 2015, multiple Chicago Police Officers, including the Defendant Officers, executed a search warrant for "Walker, Pierre L. AKA 'Mel,'" who lived at 4249 W. Jackson Blvd. and was "in possession of a blue steel semi-automatic weapon." (Compl. ¶11). Upon their arrival at the apartment, the officers found Plaintiff asleep on a makeshift bed in the dining room. (Compl. ¶¶13-14). The Defendant Officers also located "a small amount of cannabis and two boxes of bullets in the top dresser drawer of the bedroom" occupied by two other people. (Compl. ¶ 15.) Following the discovery of the bullets, Plaintiff was arrested, charged with and convicted of the unlawful use of a weapon by a felon, based in part on testimony that Walker had admitted the bullets were his. (Compl. ¶¶ 19-21.) The appellate court vacated this conviction because the evidence did not establish that Walker constructively possessed the ammunition. *People v. Walker*, 2020 IL App (1st) 162305, ¶¶20-25.[2]

---

[1] The Defendant Officers have not moved to dismiss the claims asserted against them in Count IV. The City therefore does not challenge Count VIII to the extent it is based on claims asserted in Count IV.

[2] This Court may take judicial notice of the appellate court decision in Plaintiff's underlying criminal matter. *Collins v. Village of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017).

Plaintiff now claims that the Defendant Officers fabricated his admission that he owned the bullets located during their search. (Compl. ¶ 19.) In his Complaint, Plaintiff brings civil rights claims under 42 U.S.C. § 1983 for unlawful search, seizure and false arrest, violation of due process, conspiracy, and failure to intervene based on the defendant officers' alleged misconduct. (Compl. ¶¶ 2, 58-82.) Plaintiff asserts that the City is liable for a failure to train, supervise and discipline Chicago Police Officers and for its "policy and/or custom of condoning the concealment of exculpatory evidence and the fabrication of evidence." (Compl. ¶¶ 83-91.) Plaintiff also asserts that the City is liable for the Defendant Officers' conduct under theories of *respondeat superior* and indemnification. (Compl. ¶¶ 92-97.)

### Argument

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If it only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," the complaint fails to satisfy the pleading requirements and dismissal is appropriate. *Id*. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. When evaluating a motion to dismiss under 12(b)(6), a court must accept as true all the well-pleaded material facts and must draw all reasonable inferences from those facts in the light most favorable to the plaintiff. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). But a court need not accept as true legal conclusions couched as factual allegations or unsupported conclusions of fact. *Tillman v. Burge*, 813 F. Supp. 2d 946, 959 (N.D. Ill. 2011). Only factual allegations can form the basis of liability; conclusory statements and regurgitated legal elements are disregarded. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## I. Counts V and VI Should Be Dismissed Because They Do Not Allege a *Monell* Claim.

Plaintiffs' claims against the City based on a failure to train (Count V) and an unconstitutional policy or custom (Count VI) must be dismissed because he does not plausibly allege facts necessary to state such claims. Under *Monell v. New York City Dept. of Social Services*, a municipality is liable only for its own constitutional violations, as distinguished from the misconduct of its employees. 436 U.S. 658 (1978). "Municipalities do not face *respondeat superior* liability under section 1983 for the misdeeds of employees or other agents. Only actions of the entity will suffice." *Flores v. City of South Bend*, 997 F.3d 725, 731(7th Cir. 2021). In other words, the "governmental body's policies must be the moving force behind the constitutional violation before [the Court] can impose liability." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2010). To establish municipal liability under *Monell*, Plaintiff must prove that (1) he suffered a deprivation of his civil rights; (2) the City has an unconstitutional policy; and (3) the City's unconstitutional policy caused his constitutional injuries. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Plaintiff brings two claims for municipal liability, based on the City's alleged failure to train, supervise, and discipline (Count V) and on the City's purported policy of concealing exculpatory evidence and fabricating evidence (Count VI). Plaintiff has failed to adequately allege an unconstitutional policy or causation under either claim.

### A. There Are No Well-Pled Allegations Showing an Unconstitutional Policy.

A plaintiff may show a municipality's unconstitutional policy or custom through any of avenues: "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *See Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008); *see also McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). A plaintiff also may take an "alternative path to *Monell* liability" by showing a municipality's policy in the form of its deliberate indifference to

the need to train or supervise its employees. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 380 (7th Cir. 2020). Regardless of his chosen route, Plaintiff must adequately allege the policy or custom at issue. *See Smith v. Chicago School Reform Board of Trustees*, 165 F.3d 1142, 1149 (7th Cir. 1999).

Plaintiff's *Monell* claims, based on a policy or custom of concealing or fabricating evidence, and on a failure to train, supervise, and discipline its employees, should be dismissed because the Complaint is devoid of specific factual allegations supporting either theory. In *Page v. City of Chicago*, the court dismissed a generic *Monell* claim resting on strikingly similar allegations. *Page v. City of Chicago*, 2021 WL 365610, at *3-4 (N.D. Ill. Feb. 3, 2021); *see* Second Amended Complaint For Violation of Civil Rights at ¶¶ 54-71, *Page v. City of Chicago*, No. 19-cv-07431 (N.D. Ill. Aug. 28, 2020), ECF No. 48 (attached as Ex. A). The *Page* Court found that plaintiff "has not alleged any other similar constitutional violations by Chicago police officers other than his own, he has not identified the type of training the City failed to provide, nor does he allege sufficient facts linking a failure to train to his injuries." *Page*, 2021 WL 365610 at *3. Plaintiff likewise has not identified comparable violations, specific training deficiencies, or a link to his alleged injury and his claims should meet the same fate.

   **i. Plaintiff Does Not Allege Any Widespread Unconstitutional Practice Known To Municipal Policymakers To Which They Knowingly Acquiesced.**

Count VI alleges a "policy and/or custom of condoning the fabrication of evidence." But Plaintiff failed to allege an express City policy encouraging that practice, nor does he claim that a person with final policymaking authority implemented this purported policy of custom. Plaintiff therefore cannot rely on the first two avenues for pleading *Monell* liability and instead must rely on an alleged widespread practice or custom by the City.

To allege a "widespread practice" claim, Plaintiff must assert facts sufficient to establish that a pattern of similar deprivations is so "permanent, well-settled, and widespread as to constitute

custom or usage." *See Wragg v. Village of Thorton*, 604 F.3d 464, 468 (7th Cir. 2010). That is, Plaintiff must show that the City's unwritten practice is so widespread that the City is "deliberately indifferent as to the known or obvious consequences" of the practice. *Thomas v. Cook County Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010). To establish such deliberate indifference, Plaintiff must show a series of constitutional violations, as well as specific facts regarding the violations. *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2006). Isolated acts of misconduct by non-policymaking employees are insufficient to establish a widespread practice for *Monell* liability. *Id.*; *see Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir. 1990) ("[C]ustom . . . implies a habitual practice of a course of action that characteristically is repeated under like circumstances."). To determine if a plaintiff has sufficiently pled a widespread practice, a court examines "the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. June 1, 2018).

Here, Plaintiff has not articulated *any* widespread practice or pattern of deprivations similar to his. The Complaint is devoid of any facts supporting its conclusory allegation that "Defendant Chicago had a policy and/or custom of condoning the fabrication of evidence by CPD officers." (Compl. at ¶ 90.) Plaintiff includes a generic list of alleged facts that purportedly show the City had policies and customs of failing to adequately investigate, discipline, train, supervise and control CPD officers, (Compl. ¶¶ 32-57), but not one of these allegations relates to fabrication of evidence or any similar instances of misconduct. The only factual allegations relating to the fabrication of evidence are the allegations regarding Plaintiff's own alleged injuries. (See Compl. ¶¶ 9-26.) This falls far short of establishing a pattern of similar deprivations so "permanent, well-settled, and widespread as to constitute custom or usage." *Wragg*, 604 F.3d at 468 (7th Cir. 2010).

Courts have repeatedly dismissed *Monell* claims that articulated policies with more factual support than Plaintiff has provided here. *E.g., Turner v. City of Chicago*, 2020 WL 1548957, at *3 (N.D. Ill. March 31, 2020) ("threadbare assertion that other instances similar to this have occurred in some manner, by some unspecified officers during an unspecified time period, does not raise [plaintiff's] claim for relief above speculation"); *Jones v. Hunt*, 2020 WL 814912, at *3 (N.D. Ill. Feb. 19, 2020) (Plaintiff's "broad accusations of misconduct" were "not tailored to identify particular police training procedures or policies" and were insufficient to state a *Monell* claim); *Bishop v. White*, 2019 WL 5550576, at *5 (N.D. Ill. Oct. 28, 2019) (failure to "make any specific, non-conclusory factual allegations to support an inference of a widespread practice other than to allege that he, himself, suffered a constitutional deprivation" falls short of the *Twombly/Iqbal* standard); *Carmona v. City of Chicago*, 2018 WL 1468995, at *3 (N.D. Ill. March 26, 2018); *Hill v. City of Chicago*, 2014 WL 1978407, at *7 (N.D. Ill. May 14, 2014) (dismissing Monell claim based on allegations that were "vague and broad, without sufficient details to support the existence of a custom or policy").

Plaintiff tries to bolster his deficient allegations with references to a 2007 civil case, a 2017 Department of Justice report, and former Mayor Rahm Emanuel's alleged acknowledgement of the CPD's "code of silence," but does not explain how any of these suggest a pattern affecting the conduct *in this case*. (Compl. at ¶¶ 45-48.)

Plaintiff mentions the 2007 case *Obrycka v. City of Chicago*, No. 07-cv-2372 (N.D. Ill.) and alleges that a jury found that "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence." (Compl. ¶ 44.) Even

assuming this is an accurate summary of that case, it remains unconnected to the specific misconduct – fabrication or withholding of evidence – alleged in this case.[3]

Plaintiff also alleges that a DOJ report found that CPD does not adequately train or supervise its officers or investigate police misconduct, and that the City "has deficient accountability systems." (Compl. at ¶ 46-55.) Yet Plaintiff never states facts from the report that show a CPD policy or pattern of conduct similar to the conduct at issue here. Indeed, the DOJ report focused police shootings and use of force, conduct wholly dissimilar to the Defendant Officers' alleged conduct in this case. (Ex. B, DOJ Report at 1, available at https://www.justice.gov/opa/file/925846/download).[4] Courts have found that citation to the same DOJ report insufficient to save a poorly pled *Monell* claim. *See Page*, 2021 WL 365610, at *3; *Carmona v. City of Chicago*, 2018 WL 1468995, at *4 (N.D. Ill. Mar. 26, 2018) (St. Eve, J.) ("Plaintiff's broad citation to the 160-page DOJ report, without any discussion of the specific findings of the report *or any allegations connecting the report findings to the misconduct alleged in his Complaint*, is insufficient to support his *Monell* claim.") (emphasis added). While the DOJ report may identify CPD shortcomings, it is not some "master key to unlock discovery's door for any *Monell* claim against the City, no matter how scantily the plaintiff connects his claim to the report's findings." *Carmona*, 2018 WL 1468995, at *4.

Plaintiff also alleges that former Mayor Rahm Emanuel acknowledged a CPD "code of silence" that "encourages cover-ups of police misconduct, and that [the City's] attempts to deal with police abuse and corruption have never been adequate." (Compl. at ¶ 45.) Again, assuming

---

[3] *See also First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021) abrogating *Obrycka v. City of Chicago*, 2012 WL 601810.

[4] This Court may take judicial notice of facts from this report, which is referenced in the Complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (documents incorporated by reference into a complaint may be considered on a motion to dismiss).

that is true, Plaintiff's allegations do not suggest how the Defendant Officers' conduct was caused or encouraged by this "code of silence." This extremely non-specific allegation is not tethered to any context or any of the Complaint's allegations; this supposed "code of silence" is unconnected to any concrete, widespread practice permitting or encouraging practices such as false arrests, fabricating statements, or concealing exculpatory evidence that purportedly ensnared Plaintiff.

In sum, nothing in the Complaint suggests that the *Obryka* case, the DOJ report, or the statement attributed to Rahm Emanuel was describing a widespread practice within the Chicago Police Department to permit or encourage the same kind of conduct as alleged in the Complaint here. *See Page*, 2021 WL 365610, at *3 (holding plaintiff "failed to adequately allege facts showing the requisite causal connection to allow the Court to plausibly infer that the 'code of silence' was the moving force behind his injury").

Even if Plaintiff could show that a widespread practice or custom, he must also establish that the City's alleged practices were adopted and carried out with "deliberate indifference" to their "known or obvious consequences." *Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Bryan County*, 520 U.S. at 404. To do so, Plaintiff must show that the final policymaking authority both knew of and acquiesced in this practice. *See Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993). Although evidence of a persistent and deeply-rooted practice permits the inference that policymakers must have known of its existence, Plaintiff must still prove that the policymaking authority acquiesced to it. *McNabola*, 10 F.3d at 511; *Cornfield*, 991 F.2d at 1316. As the Court observed in *Canton*, to satisfy this culpability requirement, plaintiff must demonstrate that the municipal action was taken with "deliberate indifference to its known or

obvious consequences. A showing of simple or even heightened negligence will not suffice." *Canton*, 489 U.S. at 388.

To meet the standards of *Twombly*, *Iqbal*, *McCauley* and their progeny, Plaintiff must allege facts sufficient to show (rather than just say) that the City's final policymaker knew of the alleged widespread practices and chose to effectively adopt those practices as its own, but he again merely recites, rather than supports, this necessary element of his *Monell* claim. (*See* Compl. at ¶ 33 ("Defendant Chicago's policymakers have long been aware of the policies and customs of failing to train, supervise, investigate and discipline misconduct by CPD officers, but have failed to take actions to remedy the problems").) Plaintiff cites no specific factual support showing a policymaker knew and acquiesced in any unconstitutional policy. Moreover, Plaintiff would need to show that the City's policymaker completely failed to act despite this knowledge. Here, Plaintiff neither names the final policymaker nor lists facts that plausibly support the notion that policymaker knew and approved of the alleged policy resulting in his injury.

### ii. Plaintiff Does Not Allege A *Monell* Claim Based on a Failure-to-Train Theory.

Plaintiff similarly fails to plead *Monell* liability based on the City's failure to train, supervise, and discipline its employees (Count V). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Young v. Vill. of Romeo Ville*, 2011 U.S. Dist. LEXIS 45195, at *10 (N.D. Ill. Apr. 27, 2011). To succeed on a failure-to-train theory, Plaintiff must establish that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that a factfinder could find deliberate indifference to the need for training." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 380 (7th Cir. 2020). "In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it *actually causes injury*." *Id.* The risk of constitutional violation must be so high and the need for training so

10

obvious that the municipality's failure to act reflects deliberate indifference of the rights of those who will encounter the inadequately trained employees. *Id.* "Deliberate indifference is a stringent standard "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 389 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citing *Bryan Cty.*, 520 U.S. at 409). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Here, Plaintiff never identifies any specific training or disciplinary deficiencies. He supplies no specific facts showing similar instances from which this Court could glean that the City's failure to train, discipline, or supervise was deliberately indifferent to the interests of the public who would encounter its employees. Plaintiff's general and unsubstantiated allegations that the City failed to train, discipline, and supervise police officers (Compl. ¶ 33-57, 84-87) are unsupported by *any* other specific instances similar to the misconduct alleged against the Defendant Officers, which dooms his failure-to-train claim. *See Page*, 2021 WL 365610, at *2-3.

This case is unlike those few where courts have found a failure-to-train theory viable. The Seventh Circuit recently declined to dismiss a failure-to-train claim, stressing that the complaint plausibly alleged that the City of South Bend had acted with deliberate indifference to the known and specific risk that allegedly injured the plaintiff in that case. *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021). The court found that Flores's complaint asserted specific factual allegations of instances in which officers engaged in the specific conduct at issue—driving recklessly in the dark of night at extreme speeds—and that the City knew its officers did this and

took no steps to prevent the specific behavior. *Id.* Plaintiff includes no such specific allegations in his Complaint. Instead, Plaintiff relies on sweeping, unsupported generalities. These conclusory allegations *starkly* contrast the specific allegations in *Flores,* and a comparison between the two highlights the deficiency of Plaintiff's threadbare allegations.

In *Page*, however, which involves allegations similar to those asserted here, the court found that the plaintiff "has not alleged any other similar constitutional violations by Chicago police officers other than his own, he has not identified the type of training the City failed to provide, nor does he allege sufficient facts linking a failure to train to his injuries." 2021 WL 365610, at *3. Similarly, in *Turner v. City of Chicago.*, 2020 WL 1548957, at *3 (N.D. Ill. Mar. 31, 2020), the court dismissed a *Monell* claim with prejudice where the plaintiff "failed to allege any other instances of constitutional violations or similar injuries by Chicago police officers other than his own," and thus "there are limited additional facts in his second amended complaint that would lead to a reasonable inference of deliberate indifference." The plaintiff in *Turner* went even further than Plaintiff in this case, alleging that the defendant officers "participated in previous unlawful encounters similar to the above-mentioned behaviors, exhibiting a pattern of unconstitutional acts for at least a decade" and the City failed to adequately train or supervise them despite knowledge of these "similar" encounters. *Id.* Yet the court found that "these bare-boned statements" were nothing more than a "recitation of a failure to train claim under *Monell*, which is exactly the type of assertion that *Iqbal* forbids." *Id.* Plaintiff's failure-to-train theory is likewise impermissible.

## B. Plaintiff Does Not Plausibly Allege a Causal Link Between His Injury and a City Policy.

Even if the Complaint did adequately allege the existence of an unconstitutional City policy and the requisite degree of culpability, Counts V and VI still should be dismissed because Plaintiff does not plausibly allege that any City policy directly caused his alleged injuries. *See Bryan*

*County*, 520 U.S. at 404; *Canton*, 489 U.S. at 390-91. To prevail on a *Monell* claim, Plaintiff "must satisfy a 'rigorous' standard of causation." *Connick v. Thompson*, 563 U.S. 51, 75 (2011) (Scalia, J. concurring) (quoting *Bryan County*, 520 U.S. at 405). This requires Plaintiff to "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* "A 'moving force' must be pleaded with enough facts to allow the court to infer a 'direct causal link between the municipal action and the deprivation of federal rights.'" *Anderson v. Allen*, 2020 WL 5891406 (N.D. Ill. Oct. 5, 2020) (citing *Bryan County*, 520 U.S. at 397); *see also Jordan v. City of Chicago et al.*, 2021 WL 1962385, at *5 (N.D. Ill. May 17, 2021) (the mere allegation that the code of silence was the moving force behind the violation was insufficient to state a *Monell* claim). Put simply, Plaintiff must show the policy was the "direct cause" behind his specific constitutional violation. *See, e.g., Ruiz-Cortez v. City of Chicago*, 2016 WL 6270768, at *22 (N.D. Ill. Oct. 26, 2016); *see also Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306-07 (7th Cir. 2009) (policy must directly inflict an injury and not merely be a contributing factor).

Though Plaintiff supplies a lengthy tirade regarding the City's "policies and customs of failing to train, supervise and discipline CPD officers," he makes no connection between the alleged policies or failure to train and **his** alleged specific constitutional injuries. (Compl. ¶¶ 32-57.) Without a "direct causal link between a policy or custom of the [municipality] and the alleged constitutional violations," Plaintiff's claims must be dismissed. *Estate of Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). Plaintiff conclusorily alleges that the City did not adequately train, supervise, or discipline its officers "involving fabricated police reports and applications for search warrants," and that the City had a "policy and/or custom of condoning the fabrication of evidence by CPD officers" (Compl. ¶¶ 83-91), but never describes

what the policy consisted of or how it caused the Officer Defendants' alleged conduct in this case, let alone Plaintiff's arrest, prosecution, and conviction.

To state a *Monell* claim, Plaintiff must explain how an unconstitutional City policy resulted in *his* arrest, prosecution, and conviction. Since Plaintiff alleges that the Defendant Officers' actions (arresting Plaintiff without legal cause, fabricating plaintiff's statement and police reports, and failing to disclose evidence) resulted in his arrest, prosecution, and conviction, he must identify a causal relationship between the City's policy and that specific conduct allegedly taken by the Defendant Officers. Plaintiff has simply not pleaded enough—or any—facts sufficient to raise the inference that any City policy was the moving force of this conduct beyond a level of speculation. *See Jordan*, 2021 WL 1962385, at *5 (Plaintiff "must plead enough facts to raise the inference that the code of silence was the moving force behind the constitutional violations he suffered above the speculative level"). Plaintiff has not stated any causation between his generalized allegations of an unconstitutional policy and the Defendant Officers' conduct or his alleged injury, let alone with the requisite factual specificity to support a *Monell* claim. *See Page*, at *2-3 (finding Page failed to allege a causal connection between his allegations and the injury he allegedly suffered).

## II. The City Is Not Vicariously Liable and Thus Counts VII and VIII Must Be Dismissed.

Plaintiff asserts derivative claims against the City in Counts VII (*respondeat superior*) and VIII (indemnification). In both Counts, Plaintiff seeks to hold the City liable for the alleged acts of the Defendant Officers.

Count VII must be dismissed because Plaintiff has not alleged against the Defendant Officers any claims that support *respondeat superior* liability. Each claim against the Defendant Officers – Counts I, II, III and IV - is based on 42 U.S.C. § 1983. But an entity may not be held vicariously liable under a theory of *respondeat superior* for § 1983 claims. *Shields v. Ill. Dep't of*

14

*Corr.*, 746 F.3d 782 (7th Cir. 2014); *Vance v. Peters*, 97 F.3d 987, 990 (7th Cir. 1996); *see also Monell*, 436 U.S. at 691-94 (the establishment of a policy or practice is the proper vehicle for establishing vicarious liability under § 1983).  Thus, Count VII fails.

Counts VII and VIII both should be dismissed for the additional reason that they are based, at least in part, on the Defendant Officers' liability for Counts I-III. Where a municipal employee is not liable, the local unit of government for which that employee works enjoys a similar protection by virtue of Section 2-109 of the Local Governmental and Governmental Employees Tort Immunity Act. *See, e.g.*, *Sank v. Poole*, 596 N.E.2d 1198, 1203 (Ill. App. Ct. 1992). As described by the Defendant Officers, Counts I-III against them are untimely or otherwise inadequately pled and subject to dismissal. As a result, no vicarious liability may be imposed on the City to the extent Counts VII and VIII are based on Counts I-III.[5]

## Conclusion

For the foregoing reasons, Plaintiff has failed to adequately plead his *Monell* and *respondeat superior* claims against the City, and the Court should grant the City's motion to dismiss Counts V, VI, and VII of Plaintiff's Complaint.  The Court should also dismiss Plaintiff's indemnification claim to the extent it is based on the underlying Counts I, II, and III.

Dated: August 10, 2021                    Respectfully submitted,

                                          CELIA MEZA
                                          Corporation Counsel of the City of Chicago

                                          /s/      James P. Fieweger
                                          James P. Fieweger, #6206915
                                          jpfieweger@michaelbest.com
                                          Alexius Cruz O'Malley, #6313634
                                          acomalley@michaelbest.com

---

[5] Again, the City does not challenge in this motion plaintiff's indemnification claim (Count VIII) to the extent it is premised on claims against the Officer Defendants asserted in Count IV.

Brianna J. Siebken, #6333355
bjsiebken@michaelbest.com
Special Assistant Corporation Counsel
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street, Suite 3200
Chicago, IL 60606
(312) 222-0800

*Attorneys for Defendant, City of Chicago*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 10, 2021, the foregoing document was caused to

be served on all counsel of record through the Court's ECF filing system.


/s/    *James P. Fieweger*
One of the Attorneys for Defendant,
City of Chicago