UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CV-02648 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF CHICAGO, MATTHEW DIBLICH, | ) | |
| and POLICE OFFICER OHLE, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

On a late October evening in 2015, Jamal Walker decided to stay overnight at a family member's apartment in Chicago. That was a fateful decision: early the next morning, the Chicago police executed a search warrant at the apartment, which resulted in his arrest, conviction, imprisonment—and eventual reversal of the conviction, but only after spending five years in prison. He has filed this lawsuit against the City of Chicago as well as Chicago Police Officers Matthew Diblich and Darren Ohle, alleging violations of his constitutional rights under 42 U.S.C. § 1983.[1] R. 1, Compl.[2] The Defendants have moved to partially dismiss certain counts against the individual officers, R. 19, Partial Mot. to Dismiss, and to dismiss all of the counts against the City, R. 20, Mot. to Dismiss. For the reasons explained in this Opinion, the motions are granted in part and denied in part.

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

# I. Background

In evaluating the motions to dismiss, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in Walker's favor. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

In late October 2015, Chicago Police Officer Matthew Diblich obtained a search warrant to search an apartment in the building at 4249 West Jackson Boulevard in Chicago, Illinois. Compl. ¶¶ 9, 12. Relying on statements provided by a confidential informant, the search warrant targeted Pierre Walker—who is Plaintiff Jamal Walker's brother—as the person who allegedly lived in the apartment and possessed a semi-automatic gun there. *Id.* ¶¶ 10, 11, 17.

On October 28, 2015, Officer Diblich and Officer Darren Ohle,[3] alongside around nine other officers, entered the three-bedroom apartment. Compl. ¶¶ 13, 14. They found six people there, including Plaintiff Jamal Walker. *Id.* ¶ 14. After searching the residence, the officers found cannabis and two boxes of bullets in the bedroom occupied by Antione Walker (another one of the Plaintiff's brothers) and Amaria Mordick. *Id.* ¶ 15. The bullets belonged to Antione. *Id.* ¶¶ 16, 28. The residents notified the officers that Pierre was absent from the apartment, *id.* ¶ 17, and Walker provided the officers with identification showing that he was not Pierre nor did he live in the apartment, *id.* ¶ 18. Nonetheless, despite obtaining no evidence linking

---

[3]Officer Ohle's first name was absent in the Complaint, but later confirmed by Defendants. *See* Part. Mot. Dismiss.

either the cannabis or bullets to him, the officers arrested Walker on the purported basis that he admitted to owning the bullets. *Id.* ¶¶ 18, 19.

Walker was eventually charged with unlawful use of a weapon by a felon (the charge covers possession of ammunition by a felon). Compl. ¶ 20. At Walker's April 2016 trial, Officers Diblich and Ohle testified that Walker confessed to possessing the bullets. *Id.* ¶ 21. In the defense case, Keith Terrell, who was present at the search, testified that Walker did not reside in the apartment or keep any belongings there. *Id.* ¶¶ 24–25. Ultimately, Walker was found guilty of unlawful possession of a weapon by a felon and sentenced to eight years and six months of imprisonment. *Id.* ¶ 26.

But after serving almost five years in prison, Walker's conviction was reversed by the Illinois Appellate Court in March 2020. Compl. ¶¶ 27, 29. The Illinois Appellate Court held that there was insufficient evidence to support a guilty verdict. *Id.* ¶ 27. Later, in October 2020, the state court also granted Walker a Certificate of Innocence. *Id.* ¶ 29. Walker filed this lawsuit in May 2021. Compl. The Defendants have moved to dismiss certain aspects of the Fourth Amendment and due process claims (Counts 1–3) against the individual officers, as well as the *Monell* claims and state law claims against the City (Counts 5–8) in the Complaint. Part. Mot. to Dismiss; Mot. to Dismiss.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the

defendant fair notice of what the claim is and the grounds upon which it rests.*" Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

Before turning to the claims at issue, the Court notes that Walker explicitly waived any claim for an illegal search in Count 1. R 24, Pl.'s Br. at 1. Likewise, he admits that he has failed to state a claim for a *Brady* violation or for "concealment of

---

[4] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

exculpatory evidence" in Count 2. Pl.'s Br. at 2. Those claims are dismissed, because they were not meaningfully developed or responded to in briefing. *Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 360 (7th Cir. 2016) (cleaned up); *see United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008) (Defendant "failed to respond to the Government's argument in a Reply Brief, and accordingly, we find that [Defendant] waived his sufficiency of the evidence challenge.").

## A. False Arrest (Count 1)

In Count 1, Walker alleges that Officers Diblich and Ohle falsely arrested him by fabricating evidence—namely, that he supposedly confessed to possessing the bullets on October 28, 2015. Compl. ¶¶ 58–63. The Defendants contend that the false-arrest claim is time-barred because it runs afoul of Illinois's statute of limitations. Part. Mot. to Dismiss at 7–8; Defs.' Reply at 4–5.[5] Specifically, the officers argue that Walker was required to file suit on or before October 30, 2017, which is over three years before when he actually filed the Complaint on May 17, 2021. Part. Mot. to Dismiss at 8.

It is undisputed that "[a]lthough state law determines the length of the statute of limitations for a § 1983 claim, federal law provides when that limitations period begins." *Smith v. City of Chicago*, 3 F.4th 332, 335 (7th Cir. 2021). In Illinois, Section 1983 civil-rights claims for personal injuries, like the claims in this case, are governed

---

[5]A typical § 1983 false-arrest claim requires a plaintiff to show that he was arrested without probable cause. *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). The merits of the false-arrest claim are not in dispute right now, so the Court will only consider the statute of limitations issue.

by a two-year statute of limitations. *Herrera v. Cleveland*, 8 F.4th 493, 495 n.2 (7th Cir. 2021) (citing 735 ILCS 5/13-202). A claim for false arrest accrues "at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato,* 549 U.S. 384, 397 (2007); *see also Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013) (holding that a false-arrest claim is an exception to the rule that a § 1983 claim accrues when a plaintiff knows or has reason to know of the injury forming the basis of his action; rather, the statute of limitations begins to run when the arrestee is detained pursuant to legal process).

But the statute of limitations is an affirmative defense, Fed. R. Civ. P. 8(c)(1), and "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). The exception to this rule applies where "the allegations of the complaint ... set forth everything necessary to satisfy the affirmative defense." *Id.* (cleaned up).

Here, the allegations of the complaint are clear enough to consider the limitations defense at the pleadings stage. No one disputes that sometime shortly after the arrest on October 28, 2015, Walker was detained pursuant to legal process. The statute of limitations for a false-arrest claim begins when the plaintiff is brought before a judge pursuant to legal process. *Wallace,* 549 U.S. at 390. Here, Walker failed to bring the false-arrest claim within two years of the start of legal process. Instead, he filed suit more than five years after that.

Walker resists this conclusion by relying on *McDonough v. Smith,* 139 S. Ct. 2149, 2159 (2019), to contend that "any claim that threatens to impugn a criminal

6

conviction does not accrue until the criminal proceedings are terminated in the claim-ant's favor." Pl.'s Br. at 9. According to Walker, because his arrest was predicated on fabricated evidence, his arrest "implicate[d] the validity of his criminal conviction." *Id.* at 10. That simply does not follow. It is true that, in *McDonough v. Smith*, the Supreme Court held that a Fourteenth Amendment *due process* claim (not a Fourth Amendment false-arrest claim) based on fabricated evidence accrues at the favorable *termination* of the legal proceedings against the plaintiff. 139 S. Ct. at 2153. In ex-plaining its decision, *McDonough* relied on the principles underlying *Heck v. Humph-rey,* 512 U.S. 477 (1994). In fashioning what is now a well-established rule, *Heck* held that a § 1983 claim for money damages is not cognizable if success on the claim would necessarily imply the invalidity of a state conviction. *Id.* at 486–87. In *McDonough*, the Supreme Court said the same of a fabricated-evidence due process claim: if the plaintiff were to bring the claim before even the end of the prosecution against him, then the claim would in essence "challenge the validity of the criminal proceedings against him in essentially the same manner as the plaintiff in *Heck* ...." 139 S. Ct. at 2152.

Walker misapplies *McDonough* and *Heck* to his false-arrest claim. Unlike in *McDonough*, a false-arrest claim is brought under the Fourth Amendment—not the Fourteenth Amendment's Due Process Clause. The nature of the claim is a key dif-ference: the Fourth Amendment prohibits unreasonable seizures—like false arrests— and measures the reasonableness of the search exactly *at the time* of the seizure. There either is probable cause—or there is not—right at the time of the seizure. *E.g.*,

*Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012) (noting that in evaluating probable cause for a false-arrest claim, "the court's inquiry is limited to what the officer knew *at the time* of the arrest and not what has been gained from hindsight") (emphasis added). How the false arrest plays a role in the later prosecution (if there even is one) does not matter; indeed, the actual arrest might not play a role *at all* in a later prosecution, particularly if law enforcement gathers and relies on other evidence. In contrast, a fabricated-evidence claim *always* relies on the *use* of the fabricated evidence in a criminal prosecution, and is thus akin, as *McDonough* says, to the common law tort of malicious prosecution. 139 S. Ct. at 2152. This distinction is "significant enough to warrant dissimilar treatment under *Heck*." *Smith*, 3 F.4th at 338 (emphasis in original). Because Fourth Amendment claims "merely anticipate convictions," they do not "represent the same threat to an existing prosecution as the due process case in *McDonough* …." *Id.* at 339 (emphasis in original); *see id.* at 339–40 ("A due process claim attacks the whole prosecution, while the … arrest … can sometimes be severed from the rest of the prosecution."). As a result, Walker's claim "should accrue when the Fourth Amendment wrong ends." *Id.* Put another way, the false-arrest claim in late October 2015 when Walker's arrest ended and legal process began.

Walker points to two other cases to support his accrual argument: *Jackson v. City of Chicago*, 2021 WL 3883111 (N.D. Ill. Aug. 31, 2021), and *Culp v. Flores*, 454 F. Supp. 3d 764 (N.D. Ill. 2020). Both cases are distinguishable from Walker's. In *Jackson*, the district court concluded that the plaintiff's conviction was "inextricably

8

tied up" in his Fourth Amendment false-arrest claim, *id.* at \*3, so the plaintiff's claim did not accrue until the criminal proceedings "were *fully* terminated." *Id.* at \*4 (emphasis in original). Citing *Culp*, the court in *Jackson* reasoned that the police officers in that case based the arrest on "false allegations, testimony[,] and fabricated police reports." *Id.* at \*4 (cleaned up). *Culp*, however, pre-dates the Seventh Circuit's decision in *Smith*. And because *McDonough* explicitly left intact *Wallace's* holding "that a Fourth Amendment claim is not barred by *Heck* even if it could possibly affect a future prosecution," *Smith*, 3. F4th at 340, the Court must continue to apply *Wallace* to false-arrest claims. Walker's false-arrest claim is dismissed on limitations grounds.

## B. Fabrication of Evidence (Count 2)

At the end of the day, the dismissal of the false-arrest claim might not spell the doom for Walker to recover for a substantial part of his time in custody. In Count 2, Walker argues that the same misconduct that led to his purported false arrest—fabricated evidence that Walker confessed to owning two boxes of bullets, Compl. ¶¶ 18, 19—also led to his conviction, sentence, and imprisonment. Compl. ¶¶ 64–68. By not moving to dismiss the fabricated-evidence claim, the Defendants effectively concede the viability of this claim at the pleading stage. *See generally* Part. Mot. to Dismiss; Defs.' Reply. Instead, the Defendants assert that they did not withhold or conceal any exculpatory evidence. Part. Mot. Dismiss at 8–9; Defs.' Reply at 2.

To clarify, an evidence-suppression claim under *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963), is not the same as an evidence-fabrication claim. *See Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017). As the Seventh Circuit explained in

*Avery*, a *Brady* disclosure allows the accused to use the exculpatory evidence at trial so that "the jury has a fair opportunity to find the truth." *Id.* at 439. Fabricated evidence, on the other hand, "will *never* help a jury perform its essential truth-seeking function," and thus inherently violates the defendant's right to due process. *Id.* (emphasis in original).

What's more, the requisite elements are different for each claim. To win a *Brady* claim, "a plaintiff must demonstrate that the evidence in question was favorable to him, the police suppressed the favorable evidence, and prejudice ensued because the suppressed evidence was material." *Anderson v. City of Rockford*, 932 F.3d 494, 504 (7th Cir. 2019) (cleaned up). But to prove an evidence-fabrication claim, a plaintiff must demonstrate that "the defendant officers created evidence that they knew to be false" and that "the evidence was used in some way to deprive [him] of liberty." *Id.* at 510.

To be sure, Walker could have more clearly pleaded the evidence-fabrication claim in the Complaint or at least explained it more clearly in his response brief. A claim for pretrial detention based on fabricated evidence, for example, stems from the Fourth Amendment's right to be free from seizure without probable cause.[6] *Lewis v. City of Chicago*, 914 F.3d 472, 476–78 (7th Cir. 2019). This is different from the use

---

[6]In contrast to a claim for false arrest, pretrial detention without probable cause (including fabricated probable cause) violates the Fourth Amendment even after the start of legal process. "[T]here *is* a constitutional right not to be held in custody without probable cause." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) (emphasis original). Claims for unlawful pretrial detention do not accrue until the pretrial detention ends. *Id.* at 670. Walker (who is represented by counsel) has not presented any claim or argument along these lines.

10

of false evidence to convict someone, which comprises a violation of the right to a fair trial under the Due Process Clause. *Coleman v. City of Peoria*, Illinois, 925 F.3d 336, 344 (7th Cir. 2019) (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Although Walker was eventually convicted, it is unclear if he spent any time in pretrial detention. In any event, Walker did spend time in prison pursuant to the conviction and sentence, so the evidence-fabrication claim remains viable for the alleged violation of due process that caused his imprisonment.

### C. Conspiracy (Count 3)

In Count 3, Walker alleges that Officers Diblich and Ohle conspired to deprive him of his constitutional rights. Compl. ¶¶ 69–74. The Defendants contend that Walker provides nothing more than "vague and general allegations" of conspiracy and no evidence of an agreement between the officers. Part. Mot. to Dismiss at ¶¶ 10–11; Defs.' Reply at 2–3.

To successfully state a plausible conspiracy claim under § 1983, a plaintiff must adequately allege that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 518 (7th Cir. 2020) (cleaned up); *see also Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) ("[I]t is enough ... merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with."). There is no need for any more factual detail than any other type of case: that is, the plaintiff does not have to provide a "precise

11

causal connection" between the actions of the defendants and the alleged violations. *Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006). Instead, the plaintiff is simply expected to plausibly allege that they have a "tenable theory or basis of suit" and provide defendants with adequate notice of the claims against them. *Id.* (cleaned up); *see also id.* at 732–33.

Here, Walker has set forth all the relevant factual elements to allege a conspiracy claim. First, Walker has identified two co-conspirators, Officers Diblich and Ohle. Second, Walker has properly alleged the general purpose of the conspiracy—to secure Walker's conviction with fabricated evidence. Because both Officers allegedly lied in testifying at trial that Walker confessed to ownership of the bullets, it is reasonable to infer, in these circumstances, that the officers agreed with one another to do so. Compl. ¶¶ 18, 19, 20, 26. When there are two officers who allegedly heard the false confession, the presentment of perjured trial testimony does not work unless both of the officers are in on it. Finally, Walker has identified the relevant dates of the conspiracy, starting with the arrest in October 2015 and (more importantly for the still viable due process claim) his state trial in April 2016. Compl. ¶¶ 18–20. For these reasons, Walker has sufficiently stated a § 1983 conspiracy claim against the officers.

### D. *Monell* (Count 5 & 6)

In Counts 5 and 6, Walker brings claims against the City of Chicago under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978). He alleges that the City failed to train, supervise, and discipline its police

12

officers, Compl. ¶¶ 83–87, and had a custom of fabricating evidence, *id.* ¶¶ 88–91.[7] The City argues that Walker has failed to adequately allege a *Monell* claim, whether for failure to train, supervise, or discipline, or for having an unwritten custom to commit constitutional-rights deprivations, Mot. to Dismiss at 5–6. The City also argues that there are insufficient allegations on the requisite causal link behind anything that the City did and the deprivation of Walker's rights. *Id.* at 12–15.

A municipality—like the City—may be held liable for the constitutional violations committed by its employees only if the violation was caused by the municipality's final policymaker or by a municipal policy or custom. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Monell*, 436 U.S. at 694). So a civil-rights plaintiff cannot simply rely on *respondeat superior* liability under § 1983—there is no vicarious liability under § 1983 at all. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). To prevail on a municipal-liability claim, the plaintiff must adequately allege that the injury was caused by (1) an express policy; (2) a common practice that is "so widespread and well settled as to constitute a custom or usage with the force of law" even without written law or express policy; or (3) "an allegation that a person with final policymaking authority caused the constitutional injury." *First Midwest Bank*, 988 F.3d at 986 (cleaned up). And, importantly, the plaintiff must also adequately allege that the

---

[7]Because the *Brady* claim has been dropped by Walker, only the fabricated-evidence claim remains in Count 6.

municipality's policy was the "moving force" behind the constitutional violation. *Id.* at 986–987.

Here, Walker alleges that the City engaged in a widespread but unofficial custom or practice in failing to train its officers and in fabricating evidence. Specifically, he contends that the City did not adequately train, supervise, or discipline Chicago police officers to handle "fabricated police reports and applications for search warrants." Compl. ¶¶ 84–87. Similarly, Walker alleges that the City "had a policy and/or custom of condoning the fabrication of evidence" by Chicago Police officers. *Id.* ¶ 90. The Court examines those arguments in turn.

### 1. Fabrication of Evidence (Count 6)

Although all manner of factual scenarios can give rise to a widespread custom or practice for *Monell* purposes, a plaintiff must allege, generally speaking, *multiple* incidents of wrongdoing. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). This requirement aims to ensure that the plaintiff has identified "a true municipal policy ..., not a random event." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005); *see also Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981). Courts are wary of *Monell* custom claims based on single events because single-event claims veer close to the *respondeat superior* theory of liability, which the Supreme Court explicitly rejected in *Monell. Monell*, 436 U.S. at 691; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985); *Powe*, 664 F.2d at 650–51.

Here, the fatal flaw in the *Monell* claim is that it only describes one event in which fabrication of evidence took place: Walker's own arrest and prosecution. Compl.

14

¶¶ 13, 14, 20. This single event is not enough to adequately allege a municipal custom or practice. *Thomas*, 604 F.3d at 303; *cf. League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 728 (7th Cir. 2014) (holding that three instances of misconduct by an alderman was insufficient to qualify as a "custom or usage with the force of law").

In response, Walker argues that he does not need to "allege a pattern of constitutional violations to survive a motion to dismiss." Pl.'s Br. at 5, 6. It is true that there is no absolute requirement that every *Monell* custom claim be supported by multiple alleged instances of wrongdoing. *See White v. City of Chi.*, 829 F.3d 837, 844 (7th Cir. 2016). But context matters. In some cases—like Walker's—the nature and specifics of the underlying constitutional claim demand that more than one instance is needed to make out a plausible inference for the existence of a widespread but unwritten policy or custom with the force of law. In this case, Walker's allegations are much more specific to him, rather than suggestive of a more systemic practice.

To go beyond a single event, Walker relies on various examples of research papers and litigation, as well as the United States Department of Justice's 2017 report concerning misconduct within the Chicago Police Department. *See* Compl. ¶¶ 32–57. But the Complaint does not specify what about those citations demonstrate a widespread policy or custom of the *fabrication of evidence*, in contrast to other forms of misconduct (such as fatal shootings) or a "code of silence" by Chicago Police officers. *Id*. Nor does Walker's response brief try to sift through those sources and identify the fabricated-evidence examples. The Court concludes that these cited sources are too

15

vague (or at the least, Walker presents them that way, without further elucidation on fabricated evidence) to infer that (1) a widespread policy or custom of fabricating evidence existed within the Chicago Police Department or (2) a policy or custom like that was the moving force behind Walker's injury. *See e.g.*, *Page v. City of Chicago*, 2021 WL 365610, at *2 (N.D. Ill. Feb. 3, 2021) (citing cases).

Walker tries to distinguish his Complaint from *Page* by arguing that here the officers allegedly lied about the confession as opposed to merely failing to report the misconduct of others. *See* Pl.'s Br. at 6. That distinction makes no difference. As *Page* explained, many of the sources to which Walker cites are inapposite because they focus on excessive force in police shootings—not fabricated-evidence claims. *See* 2021 WL 365610, at *3. For example, in then-Mayor Rahm Emanuel's December 2015 interview, his statement concerning a "code of silence" within the Chicago Police was delivered specifically in the context of excessive force. *Id.* at *3, Compl. ¶ 45. So too were the DOJ Report's conclusions. 2021 WL 365610 at *3; Compl. ¶¶ 46–55. There are therefore insufficient allegations of an unwritten policy or custom to fabricate evidence.

### 2. Failure to Train (Count 5)

Similarly, Walker's failure-to-train claim lacks concrete factual allegations. A failure to train may constitute an official custom or policy for purposes of § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [government employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Sornberger v. City of Knoxville*, 434 F.3d

16

1006, 1029 (7th Cir. 2006) ("Establishing *Monell* liability based on evidence of inadequate training or supervision requires proof of 'deliberate indifference' on the part of the local government."). Walker argues that the Complaint sufficiently alleges deliberate indifference, Pl.'s Br. at 8–10, but once again, the Complaint refers to the same generalized sources rejected above.

Having said that, because Walker has yet to amend the complaint, the dismissal of the *Monell* claims is without prejudice. If he can fix the allegations, then he may propose the filing of an amended complaint. (For example, by making allegations that tie the factual findings in the Justice Department report to the type of alleged misconduct here.) Or if discovery reveals some facts that might support a *Monell* claim, then he may propose an amended complaint at that point (subject to other litigation deadlines, like a Civil Rule 16(b) deadline to amend pleadings). Before doing so, however, Walker should consider carefully whether it really makes sense to consume the time and resources needed to litigate *Monell* claims (which, if unsuccessful, might require him to pay costs related to the pursuit of those claims). In any event, the *Monell* claims are dismissed without prejudice at this time.

### E. State Claims (Count 7–8)

Finally, what remains to discuss are the *respondeat superior* and indemnification claims against the City. Compl. ¶¶ 92–97. To begin, *respondeat superior* liability does not apply to § 1983 claims. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) ("The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be personally responsible for the

17

deprivation of a constitutional right."). And there are no state law claims in this case, so the Court dismisses Count 7 outright.

On the indemnification claim, Walker asserts that the City is liable to indemnify officers for § 1983 violations. Compl. ¶¶ 95–97; *see* 745 ILCS 10/9-102 (imposing a statutory duty on local public entities to indemnify employees for actions taken in their official capacity); s*ee also Cates v. Manning*, 2020 WL 1863299, at *3 (N.D. Ill. Apr. 14, 2020) ("[Section] 1983 plaintiffs routinely assert section 9-102 indemnification claims against municipalities simultaneously with the underlying claims against the individual officers who may have harmed them."). Because the fabricated-evidence claim survives against the individual Defendants, the indemnification claim survives too.

## IV. Conclusion

The Defendants' motions to dismiss, R. 19, 20, are granted in part and denied in part. The following claims are dismissed: unlawful search and seizure (Count 1); concealment of exculpatory evidence (Count 2); conspiracy as to the false arrest (Count 3); the *Monell* claims (Counts 5 and 6); and the *respondeat superior* claim (Count 7). What remains intact are the due process claim for fabricated evidence (Count 2), the conspiracy claim to commit that violation (Count 3), and indemnification as to the City (Count 8). The dismissals are without prejudice to a proposed amendment if discovery warrants it.

The parties shall confer on a proposed discovery schedule and file a status report with the proposal. The status report is due on April 8, 2022. The tracking status

hearing of April 8, 2022, is reset to April 15, 2022, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the Court will review the status report and enter a schedule from there.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2022