UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:21-cv-02648 |
| | ) | Honorable Edmond E. Chang |
| CITY OF CHICAGO, et al., | ) | Honorable M. David Weisman |
| | ) | |
| Defendants. | ) | |

**FEDERAL RULE OF CIVIL PROCEDURE 72 OBJECTION TO THE MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO COMPEL**

## Introduction

This case involves Plaintiff, Jamal Walker's civil rights claim against Defendant, Chicago Police Department ("CPD") Officers Matthew Diblich ("Defendant Diblich") and Darren Ohle ("Defendant Ohle"). Based upon information allegedly provided by a confidential informant, Defendant Diblich obtained a search warrant for an apartment. Defendant Diblich, Defendant Ohle, and other CPD Officers executed the search warrant when Mr. Walker happened to be spending the night at the apartment. Defendant Diblich and Defendant Ohle then fabricated police reports and falsely testified that, during the execution of the search warrant, Mr. Walker confessed to illegally owning a box of ammunition. Based upon this fabricated evidence, Mr. Walker was wrongfully convicted. Ultimately the conviction was reversed and a certificate of innocence was granted, but only after Mr. Walker spent almost five years in prison.

To obtain evidence for the fabrication of evidence claim, Plaintiff sought discovery from Defendant Diblich, Defendant Ohle, and Defendant, City of Chicago ("the City") pertaining to the confidential informant ("CI") who supposedly provided the information for the search warrant. Mr. Walker believes that Defendant Diblich made up the existence of CI and swore in

1

the affidavit for the search warrant to numerous lies about the CI. If the discovery provides further evidence that the CI does not exist and Defendant Diblich repeatedly lied about the CI, such evidence would be relevant to Plaintiff's claim that Defendant Diblich also lied about Mr. Walker's alleged confession.

Defendants objected to the CI discovery based upon the law enforcement privilege and/or the confidential informant privilege. Plaintiff therefore brought a motion to compel the CI discovery, which the Honorable M. David Weisman denied in a Memorandum Opinion and Order. (ECF No. 64). Plaintiff respectfully submits this Federal Rule of Civil Procedure 72 objection to the Memorandum Opinion and Order because there are three parts of the Order that are clearly erroneous.

First, the Memorandum Opinion and Order failed to address Defendants' admission that they cannot identify the CI. In addition, the Order did not weigh the fact that Defendants did not claim that there are documents pertaining to the CI. Defendants' inability to identify the CI or to produce any documents pertaining to the CI should destroy any justification for the confidential informant privilege. If the CI cannot be identified either by Defendants' testimony or through documents in the possession of Defendants, then there is no one to protect from possible retaliation and no law enforcement investigations that could be compromised. The confidential informant privilege therefore should not apply to Plaintiff's discovery.

Second, the Memorandum and Order misunderstood the relevance of the CI discovery. While the Order acknowledges that discovery pertaining to the CI is relevant to the Defendants' credibility, the Order dismisses evidence regarding credibility as mere speculation which only might be useful. Credibility is in fact the most important issue in this case. The relevance of the information sought by Plaintiff's discovery is not the identity of the CI or the information

2

provided by the CI. Instead, the purpose of the CI discovery is to provide further evidence that Defendant Diblich made up the CI as well as numerous facts about the CI. Evidence that Defendant Diblich told several lies about a fictional CI in a sworn affidavit would be significant to establishing Plaintiff's fabricated evidence claim that Defendant Diblich also lied when he created police reports and testified under oath about Mr. Walker's alleged confession.

Third, the Memorandum and Order did not consider the easy remedy to address any alleged concerns about Plaintiff's CI discovery. All the CI discovery could occur under an "attorneys' eyes only" provision which would protect the identity of the alleged CI and preserve any law enforcement investigation involving the CI. As stated above, if there is nothing discoverable about the CI then there is no possibility of harm. Or if Defendants can identify the CI and/or produce documents pertaining to the CI then the "attorneys' eyes only" provision would safeguard that information, which would be of no use to Plaintiff's fabrication of evidence claim and could remain a secret.

## Statement of Facts

### 1. All the Facts for Defendant Diblich's Complaint for Search Warrant Were Allegedly Provided by the CI.

On October 28, 2015, the Circuit Court for Cook County, Illinois issued a search warrant based upon a sworn complaint by Defendant Diblich. (ECF No. 53-2). The search warrant provided authorization for the search of a person named Pierre Walker and the premises of 4249 W. Jackson Blvd. (Id.). The search warrant also provided authorization to seize a blue steel semi-automatic weapon which was used in the commission of or which constituted evidence of the offense of unlawful use of weapons by a felon. (Id.).

In the complaint for search warrant, Defendant Diblich set forth several alleged facts pertaining to the CI. First, Defendant Diblich claimed that, on October 27, 2015, he had a conversation with a citizen who was a registered CI with the CPD Organized Crime Division. (ECF No. 53-3 at p.1). Second, Defendant Diblich claimed that the CI had provided him with information "at least three times in the past which led to the recovery of illegal firearms and arrests." (Id.). Third, Defendant Diblich claimed that the CI had assisted him "in at least three narcotics investigations and has provided information which has led to the execution of the search warrants which led to the recovery of contraband." (Id.). Fourth, Defendant Diblich claimed that the CI had assisted him "in controlled buys and has provided information in street level drug sales which has led to the recovery of narcotics and arrests of the involved offenders." (Id. at pp.1-2).

Defendant Diblich's complaint for search warrant also contained alleged facts provided by the CI about an individual known as "Mel." First, Defendant Diblich claimed that the CI told him that there was a black male known as "Mel" who was in possession of a blue steel semi-automatic firearm in the second floor apartment located at 4249 W. Jackson Blvd. in Chicago, Illinois. (ECF No. 53-3 at p.2). Second, Defendant Diblich claimed that the CI told him that that the CI met with "Mel" in the apartment within the previous 24 hours. (Id.). Third, Defendant Diblich claimed the CI told him that the CI "observed 'Mel' placing a blue steel handgun under a mattress in a bedroom." (Id.). Fourth, Defendant Diblich claimed that the CI told him that the CI had "seen 'Mel' with the same blue steel handgun while in the second floor apartment at least three times in the past month." (Id.). Fifth, Defendant Diblich claimed that the CI told him that he was familiar with handguns and recognized the handgun that "Mel" possessed to be an actual firearm. (Id.).

The Complaint for search warrant then sets forth that Defendant Diblich and the CI allegedly went to the area of 4249 W. Jackson Blvd. on October 27, 2015. (ECF No. 53-3 at p.2). In a remarkable bit of good timing, Defendant Diblich claimed that the CI pointed to the building located at 4249 W. Jackson Blvd. and identified the individual known as "Mel" who happened to be standing on the porch of the building. (Id.). Defendant Diblich also claimed that the CI told him that the CI had known "Mel" for the past month and that the CI somehow knew that "Mel" was in possession of the blue steel handgun the entire time." (Id.).

The complaint for search warrant then states that Defendant Diblich used the CPD data warehouse to identify the individual known as "Mel" to be Pierre Walker. (ECF No. 53-3 at p.2). Defendant Diblich claimed that the CI recognized a digital mug shot of Pierre Walker as the same person the CI allegedly saw on the front porch of 4249 W. Jackson Blvd and as the person he knew as "Mel." (Id.). Defendant Diblich claimed to have done a name check of Pierre Walker and learned he was a convicted felon. Defendant Diblich also claimed to have provided the Judge who signed the search warrant with the CI's criminal history and any pending investigations of the CI. (Id.).

Importantly, there is nothing in the complaint for search warrant showing that Defendant Diblich did anything to corroborate the information allegedly provided by the CI. (ECF No. 53-3 at pp.1-2).

**2. Plaintiff Was Arrested and Prosecuted Because of the Search Warrant.**

Defendant Diblich, Defendant Ohle, and other CPD Officers executed the search warrant on October 28, 2015. (ECF No. 53-4 at p.2). Defendant Diblich claimed that he found the target of the search warrant lying on a bed in the front room. (Id.). The person who was lying on the

5

bed in the front room was not Pierre Walker, but in fact was Plaintiff, Jamal Walker. (ECF No. 53-5 at ¶3).

Defendant Diblich claimed to have found cannabis inside a back pack from the center bedroom during the execution of the search warrant. (ECF No. 53-4 at p.2). In addition, Defendant Diblich claimed that during the execution of the search warrant CPD Officer Pierson found a box of .40 caliber ammunition in the same center bedroom inside a dresser drawer. (Id.). Even though the cannabis and the ammunition were found in a different bedroom than where Plaintiff, Jamal Walker was found, Defendant Diblich questioned Mr. Walker about the items. (Id.). According to Defendant Diblich, Mr. Walker confessed to possessing both items. (Id.). Defendant Diblich also claimed that Mr. Walker confessed to possessing the bullets during police transport. (Id. at p.3). Contrary to the claims of Defendant Diblich, Mr. Walker never confessed to possessing the cannabis or the ammunition. (ECF No. 53-5 at ¶4).

The fabricated evidence of Plaintiff, Jamal Walker's alleged confessions resulted in the violation of Mr. Walker's right to due process and a fair trial. Defendant Diblich and Defendant Ohle fabricated their police reports to state that Mr. Walker admitted to possessing the box of ammunition. (ECF No. 1 at ¶19). Mr. Walker was then charged with unlawful use of a weapon by a felon. (Id. at ¶20). During Mr. Walker's criminal trial, Defendant Diblich and Defendant Ohle testified consistent with their fabricated police reports – that Mr. Walker confessed to possessing the ammunition. (Id. at ¶21). Based upon the fabricated evidence, the court found Mr. Walker guilty of unlawful possession of a weapon by a felon. (Id. at ¶26). Mr. Walker therefore brought this case and a fabrication of evidence claim against Defendant Diblich and Defendant Ohle. (Id. at ¶¶64-68).

6

3. **Jamal Walker Denies the Facts Allegedly Provided by the CI in the Complaint for Search Warrant.**

Jamal Walker denies the alleged facts provided by the CI to Defendant Diblich that are set forth in the complaint for search warrant. Mr. Walker never possessed a blue steel semi-automatic handgun in the second floor apartment of 4249 W. Jackson Blvd. (ECF No. 53-5 at ¶5). In addition, Mr. Walker never placed a blue steel handgun under a mattress in a bedroom of the apartment. (Id. at ¶6). Moreover, Mr. Walker was not the in the apartment with the blue steel handgun at any time during the month preceding October 27, 2015. (Id. at ¶7). Furthermore, Mr. Walker was not on the porch of the building located at 4249 W. Jackson Blvd. on October 27, 2015. (Id. at ¶8). Indeed, Mr. Walker did not even live at 4249 W. Jackson Blvd. in 2015. (Id. at ¶9). Mr. Walker believes that all the information provided by the CI to Defendant Diblich is false and that CI does not exist. (Id. at ¶10). In fact, Mr. Walker believes that Defendant Diblich made up the CI and made up the information provided by the CI to obtain the search warrant. (Id. at ¶11).

4. **Defendants Have Refused to Respond to Discovery Pertaining to the CI.**

Because Jamal Walker denies the alleged information provided by the CI, believes that the CI may not exist, and believes that Defendant Diblich made up the CI and made up the information provided by the CI to obtain the search warrant, Plaintiff served written discovery upon Defendants pertaining to the CI. In response, Defendants objected and refused to respond.

Plaintiff's interrogatory number 3 asked for the identity of the CI. The City objected that the identity of the CI was subject to the confidential informant's privilege. (ECF No. 53-6 at p.2). The City therefore refused to identify the CI. (Id.). Defendant Diblich and Defendant Ohle also objected to interrogatory number 3, claiming that disclosure of the CI's identity could endanger

the safety of the CI, and was privileged from disclosure. (ECF 53-7 at p.2; ECF No. 53-8 at p.2). Defendant Diblich and Defendant Ohle also refused to identify the CI. (Id.).

Plaintiff's request for production number 2 asked for all documents and communications pertaining to the CI. Subject to objections not relevant here, the City produced the search warrant, the complaint for search warrant, and CPD reports that are Bates Numbered as CITY_WALKERJ_000007-26. (ECF No. 53-9 at p.2). The City did not, however, produce any documents or communications which identify the CI or to support Defendant's Diblich's claim the CI was a registered informant with the CPD who had a criminal history and had assisted in numerous matters. (ECF No. 53-10). Defendant Diblich and Defendant Ohle also objected to request for production number 2, claiming that identifying the CI could endanger the safety of the CI, and was privileged from disclosure. (ECF No. 53-11 at p.2). Defendant Diblich and Defendant Ohle did not produce any documents or communications pertaining to the CI. (Id.).

During the parties' discussions about discovery pertaining to the CI, Defendants made a crucial admission. Specifically, counsel for Defendant Diblich and Defendant Ohle stated that the Defendants claim not to remember the name of the CI. (ECF No. 53-1 at ¶¶6-7). In their joint response to Plaintiff's motion to compel, Defendants did not contradict counsel's statement that Defendant Diblich and Defendant Ohle do not know the name of the CI. (ECF No. 62). In addition, Defendants' response did not claim that they possess documents which would identify the CI. (Id.). Defendants' lack of knowledge regarding the name of the CI and their failure to state that there are documents identifying the CI are remarkable. Defendant Diblich should be able to remember the name of the CI given the alleged significant contact and numerous cases with the CI. And the City should have some documents pertaining to the CI if the CI was truly a CPD registered informant with a criminal history.

**Argument**

1. **The Memorandum Opinion and Order Ignored that There is No Identifiable CI to Protect and No Law Enforcement Investigation to Jeopardize.**

Defendants have refused to identify the CI or to produce documents pertaining to the CI based upon the law enforcement privilege and/or the confidential informant privilege. The law enforcement privilege is designed to protect criminal investigations. *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). The confidential informant privilege is designed to encourage citizens to become police informants by protecting the informants from the dangers of possible retaliation. *Guzman v. City of Chicago*, 242 F.R.D. 443, 446-447 (N.D. Ill. 2007).

In the discussions preceding Plaintiff's motion to compel and in their responses to the motion, Defendants destroyed the factual basis for the privileges they invoke. Defendants cannot name the CI and did not state that there are any documents identifying the CI. As a result, there is no identifiable person to safeguard from possible retaliation. And if Defendants cannot name the CI or produce any documents identifying the CI, then there are no criminal investigations to protect. The Memorandum Opinion and Order denying Plaintiff's motion to compel ignored the fact that the Defendants cannot identify the CI. (ECF No. 64). Instead of considering this important fact, the Order assumed that the confidential informant privilege applied. (Id.).

The Court should take the fact that Defendants cannot identify the CI into account and sustain Plaintiff's objection to the Memorandum Opinion and Order. If the Court orders Defendants to respond to Plaintiff's discovery regarding the CI, Defendants' responses should be simple. In response to interrogatory number 3 asking for the identity of the CI, Defendants' response should be "unknown." In response to request for production number 2 seeking all documents and communications pertaining to the CI, Defendants' response should be "none." In

their depositions, Defendant only need to testify that they do not know the identity of the CI and have no documents pertaining to the CI. And if the identity of the CI is unknown, then there is no possibility for a deposition of the CI. That would be the end of the CI discovery. Accordingly, there is no reason to prevent the CI discovery on the basis of the law enforcement privilege or the confidential informant privilege.

### 2. The Memorandum Opinion and Order misconstrued the relevance of the CI discovery.

The Memorandum Opinion and Order correctly recognized that the existence of the CI is relevant to the credibility of the Defendants. (ECF No. 64 at p.1). The Order then mistakenly concluded that, even if Defendant Diblich made up the CI and lied about the information allegedly provided by the CI, such evidence "at most . . . might cast doubt on defendants' credibility." (Id. at p.2). On the contrary, evidence that Defendant Diblich created a fictional CI and then swore to numerous lies about the CI in the affidavit for the search warrant should destroy Defendant Diblich's credibility.

Indeed, it is incredible to believe that a jury would find that Defendant Diblich told <u>the following 15 lies</u>: (1) the CI existed; (2) the CI was a registered informant with the CPD; (3) the CI provided information at least three times that led to the recovery of illegal firearms and arrests; (4) the CI assisted in at least three narcotics investigations that led to the recovery of contraband; (5) the CI assisted in controlled drug buys; (6) the CI knew that there was someone named "Mel" who was in possession of an illegal firearm; (7) the CI met with "Mel;" (8) the CI observed "Mel" place a blue steel handgun under a mattress in a bedroom of the apartment; (9) the CI saw "Mel" with the handgun in the apartment three times; (10) the CI was familiar with handguns; (11) Defendant Diblich and the CI travelled together to the apartment location; (12) the CI identified "Mel" as a person standing on the porch of the building where the apartment

was located; (13) the CI had known "Mel" for the past month and knew that "Mel" was in possession of the handgun the entire time; (14) the CI identified "Mel" using a digital mug shot; and (15) Defendant Diblich provided the Judge who signed the search warrant with the CI's criminal history and any pending investigations of the CI, but that the same jury also would find that Defendant Diblich told the truth that Jamal Walker confessed to owning the box of ammunition. Instead, it is almost certain that the same jury would find that Defendant Diblich told a sixteenth lie about Mr. Walker's alleged confession.

If Defendant Diblich cannot identify the CI despite the 15 alleged pieces of information set forth above that Defendant Diblich swore to in an affidavit, and if the City has no documents pertaining to the CI despite the CI allegedly being a registered informant with the CPD with a criminal history, then a reasonable jury could conclude that Defendant Diblich lied about the CI. The same reasonable jury likely would conclude that Defendant Diblich fabricated the evidence of Jamal Walker's alleged confession and find for the Plaintiff on the fabrication of evidence claim. Thus, Plaintiff's CI discovery is extremely relevant to this case and should overcome any claim of privilege.

3. **The Memorandum Opinion and Order Failed to Consider that an "Attorneys' Eyes Only" Provision Could Address Any Concerns About CI Discovery.**

In the brief in support of the motion to compel CI discovery, Plaintiff set forth how courts here in the Northern District of Illinois have permitted CI discovery to occur under "attorneys' eyes only" provisions. (ECF No. 54 at p.13) (citing *Coleman-Johnson v. Chicago, Illinois Police Officers*, 1996 WL 66140, *5 (N.D. Ill. Feb. 13, 1996) and *Heffernan v. City of Chicago*, 2012 WL 642536, *3 (N.D. Ill. Jan. 24, 2012)). The Memorandum Opinion and Order did not address whether Defendants' privilege objections to Plaintiff's CI discovery could be resolved with an "attorneys' eyes only" provision. (ECF No. 64).

If Defendants provide their responses to the CI discovery under an "attorneys' eyes only" provision, there is no possibility of harm from the discovery, As set forth above, Defendants cannot identify the CI and do not claim to have any documents pertaining to the CI. If there is nothing discoverable about the CI then there is no danger to any individual and no law enforcement investigation that could be compromised. On the other hand, if Defendants can identify the CI and/or produce documents pertaining to the CI, then the "attorneys' eyes only" provision would prevent that information from being revealed. And if discovery reveals that the CI does exist and can confirm the information sworn to by Defendant Diblich, then the CI's identity would be of no use to Plaintiff's fabrication of evidence claim and would not be disclosed beyond the attorneys in this case. Either way, an "attorneys' eyes only" provision would allow Plaintiff to obtain the CI discovery without any risk.

Lastly, it is important to recognize the possible ramifications of the Memorandum Opinion and Order denying Plaintiff's motion to compel CI discovery. The Order claimed that even if Defendant Diblich created a fictional CI and swore to several lies about the CI, Defendant Diblich is shielded from answering any questions by the confidential informant privilege. (ECF No. 64 at p.2). If the Order stands, other police officers may feel free to make things up and then commit constitutional rights violations based upon the false information because they know that they will not have to answer any questions about their lies. The Court can prevent such possible results by sustaining Plaintiff's objection.

## Conclusion

For the reasons set forth above, Plaintiff respectfully requests that the Court sustain Plaintiff's Federal Rule of Civil Procedure 72 objection and order: (1) Defendants' responses to written discovery pertaining to the CI set forth in Plaintiff's interrogatory number 3 and request

for production number 2 and (2) responses from Defendants and potentially other CPD officers to deposition questions pertaining to the existence of CI and about any documents pertaining to the CI.

Date: October 20, 2022

                                                                                           s/ *Jarrett Adams*
                                                                                           Jarrett Adams, Esq.
                                                                                           The Law Offices of Jarrett Adams, PLLC
                                                                                           40 Fulton Street, Floor 17
                                                                                           New York, NY 10038
                                                                                           (646) 880-9707
                                                                                           *Attorney for Plaintiff, Jamal Walker*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of October 2022, the above and foregoing has been served electronically on all counsel of record.

*s/ Jarrett Adams*
Jarrett Adams
