UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CV-02648 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On a late October evening in 2015, Jamal Walker slept overnight at a family member's apartment in Chicago. R. 124, DSOF ¶ 12; R. 128-8, DSOF Exh. 8 at 11–12; R. 124-5, Jonathan Walker Dep. at 102:21–25.[1] Early the next morning, the Chicago police executed a search warrant on the apartment, leading to Walker's arrest, conviction, and imprisonment for unlawful possession of ammunition by a felon. DSOF ¶¶ 11–12, 46; R. 124-6, Diblich Dep. at 38:10–14; R. 134, PSOF ¶¶ 1–3. After five years in prison, however, the state appellate court held that there was insufficient evidence to prove that the ammunition belonged to Walker, so his conviction was reversed. DSOF ¶ 46.

Later, the state trial court granted a Certificate of Innocence to Walker, PSOF ¶ 2; R. 124-16, DSOF Exh. 16 at 2, and he has now sued the City of Chicago and Chicago Police Officers Matthew Diblich and Darren Ohle, alleging that the

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

admission of certain evidence at trial violated his constitutional rights because the evidence was fabricated.[2] R.1, Compl. The City and the officers moved to dismiss, *see* R. 19, Individual Def. Mot. Dismiss; R. 20, City Def. Mot. to Dismiss, and this Court granted the motion in part and denied it in part. *See* R. 30, 3/31/2022 Order. Three claims survived the dismissal motions: a due process claim for fabricated evidence (Count 2); the conspiracy claim to commit that violation (Count 3); and indemnification as to the City (Count 8).

The Defendants now move for summary judgment on the remaining claims. *See* R. 123, City Def. Mot.; R. 125, Individual Def. Br. The Defendants argue that any alleged fabricated trial testimony cannot be the foundation of a due process clam because it is protected by absolute immunity. *Id.* at 8–11. And, without a viable evidence-fabrication claim, all the other claims also fail. *Id.* at 11–15. For the reasons explained in this Opinion, summary judgment is granted.

## I. Background

In deciding the City's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In late October 2015, a confidential informant reported to Chicago Police Officer Matthew Diblich that he saw a man named Pierre Walker—Plaintiff Jamal Walker's brother—unlawfully in possession of a semi-automatic gun at 4249 West

---

[2]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

Jackson Boulevard in Chicago. DSOF ¶¶ 4–5; R. 124-1, DSOF Exh. 1 at 4 (PDF page number); Diblich Dep. at 23:14–24, 35:18–21, 92:22–93:6, 103:10–16. Relying on this information, Diblich obtained a state court search warrant authorizing him to search the second floor of that apartment for the gun. *Id.*

Officers Diblich and Darren Ohle, along with several other officers, executed the search warrant on October 28, 2015. DSOF ¶ 11; Diblich Dep. at 38:10–17. The officers entered the three-bedroom apartment and encountered six people inside, including Jamal Walker. DSOF ¶¶ 12–13; DSOF Exh. 8 at 11:23–12:24, 13:8–12, 18:11–19:16; R. 124-17, Jamal Walker 03/27/2023 Dep. at 46:2–27:3, 76:23–77:9, 200:15–24. The officers found two boxes of bullets and some cannabis in a bedroom occupied by Antione Walker (the Plaintiff's brother) and Antione's girlfriend Amaria Mordick. DSOF ¶ 15; Diblich Dep. Tr. at 50:10–13, 119:9–21; DSOF Exh. 8 at 13:16–23, 16:12–14. The bullets belonged to Antione. PSOF ¶ 1; R. 124-4, Antoine Walker Dep. Tr. at 81:18–84:12, 85:8–18, 127:5–129:3. The persons in the apartment told the officers that Pierre Walker (the original subject of the search warrant) was not there. Antione Walker Dep. Tr. at 127:10–128:16. Walker (that is, Jamal Walker, the Plaintiff) gave the officers his identification to prove that he was not Pierre and that he did not live in the apartment. *Id.*

The officers did not find anything else in the apartment. No specific physical evidence connected to the bullets or the cannabis. PSOF ¶ 9; *see* DSOF Exh. 8; *People v. Walker*, 164 N.E.3d 601, 607 (Ill. App. 2020). Yet the officers arrested Walker,

asserting in their arrest report that Walker had admitted to owning the bullets. PSOF ¶¶ 5–8; R. 124-7, DSOF Exh. 7.

Walker was charged with unlawful use of a weapon by a felon (the pertinent state law also covers unlawful possession of ammunition by a felon), 720 ILCS 5/24-1/1(a). DSOF ¶ 19; R. 124-22, DSOF Exh. 22. The case went to trial in 2016 in Cook County Circuit Court. DSOF ¶ 22; DSOF Exh. 8. At the bench trial, Officers Diblich and Ohle testified that Walker admitted to possessing the bullets. DSOF ¶ 25. First, Diblich testified that Walker confessed that "the bullets were his, and that they were too pretty to throw away. He then said … I didn't have shit on him. He said that the weed was his; and that it was a misdemeanor; and that the bullets were a misdemeanor; and all I had on him, were misdemeanors." DSOF ¶ 25; DSOF Exh. 8 at 14:20–15:12. Ohle testified that Walker went further and said, "I can't wait to find your kids. If you think … that all I got is the bullets." *Id.* ¶ 27; DSOF Exh. 8 at 30:2–14. In Walker's defense case, Keith Terrell, who was in the apartment during the search, testified that Walker did not live in the apartment. DSOF ¶ 36; DSOF Exh. 8 at 54:4–55:8, 57:3–5. The state court judge found Walker guilty and sentenced him to 8½ years of imprisonment. DSOF ¶ 43; DSOF Exh. 8 at 77:5–9.

Five years into his sentence, in March 2020, the Illinois Appellate Court reversed Walker's conviction, holding that there was insufficient evidence to support a guilty verdict. DSOF ¶ 46; R. 124-15, DSOF Exh. 15 at 2–9 (PDF page numbers). Later that year, in October 2020, the state court granted Walker a Certificate of Innocence. PSOF ¶ 2; R. 124-16, DSOF Exh. 16.

In May 2021, Walker filed this civil lawsuit against Officer Diblich, Officer Ohle, and the City of Chicago, alleging that his arrest, prosecution, and conviction arose from various federal constitutional violations. *See* Compl. The officers moved to dismiss certain aspects of Walker's Fourth Amendment and due process claims (Counts 1–3), and the City moved to dismiss the *Monell* and state law claims against the City (Counts 5–8). Individual Def. Mot. to Dismiss; City Def. Mot. to Dismiss. The Court dismissed the Fourth Amendment claim (Count 1); the claim of concealment of exculpatory evidence (Count 2); conspiracy as to the false arrest (Count 3), the *Monell* claims (Counts 5 and 6); and the *respondeat superior* claim against the City (Count 7). 03/31/2022 Order.

The Defendants now move for summary judgment on the remaining claims: the due process claim for fabricating the confession; conspiracy between the officers to do so; failure to intervene' and indemnification against the City. City Def. Mot.; Individual Def. Br.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378

5

(2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

### 1. Due Process Claim for Evidence Fabrication

Officers Diblich and Ohle first argue that they are entitled to summary judgment on the due process claim for fabricating the confession. The Defendants argue that their trial testimony about Walker's alleged confession does not qualify as fabricated evidence for the purpose of a due process claim under the Fourteenth Amendment, and, even if it did, the officers' trial testimony is protected from liability for damages by the absolute immunity that protects witness testimony. The Defendants are right: the officers' trial testimony is protected by absolute immunity, so Walker's fabricated-evidence claim fails as a matter of law.

It is true that there is a nuanced distinction—for *civil*-damages cases—between fabricated evidence versus perjured trial testimony. For *criminal* prosecutions,

however, no matter the characterization—evidence versus trial testimony—law enforcement officers of course "may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (reversing criminal conviction based on false testimony that the state prosecutor knew to be false). But when it comes to obtaining money damages in a *civil* case, the distinction between fabricated *evidence* versus trial *testimony* makes all the difference.

When a plaintiff alleges that evidence (again, setting aside trial testimony) was knowingly fabricated and then introduced at trial, the plaintiff has a viable due process claim if the evidence had a reasonable likelihood of affecting the jury's judgment. *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) (*Patrick II*) (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)). "The essence of a due-process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Id.* (cleaned up).[3] This is based on the principle that "[f]alsified evidence will *never* help a jury perform its essential truth-seeking function." *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) (emphasis in original). The Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). This applies even if the evidence is not physical in nature and even if the evidence is presented through testimony. For example, a police report with made-up facts can be the premise of a fabricated-evidence claim if the report is introduced at trial. *See Patrick II*, 974 F.3d at 835 (explaining viability of evidence-fabrication claim based on a falsified police lineup report used at the criminal trial). It would be odd indeed if trial testimony could immunize already-fabricated evidence simply by introducing the evidence *through* trial testimony. Indeed, introduction at trial is a *required* element of an evidence-fabrication claim. *See Avery*, 847 F.3d at 441 (clarifying that police officers who fabricate evidence cannot claim absolute immunity by authenticating the evidence at trial); *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) (explaining that a "prosecutor cannot retroactively immunize himself from conduct by perfecting his wrong-doing through introducing the fabricated evidence at trial").

But a due process claim based *solely* on trial-testimony perjury *itself* must fail as a matter of law. The Supreme Court held, decades ago, that absolute immunity for trial testimony protects police officers from money damages in § 1983 suits. *Briscoe v. LaHue*, 460 U.S. 325, 335–36, 342 (1983). *Briscoe* explained that when § 1983 was adopted (as part of the Civil Rights Act of 1871), the common law recognized absolute immunity for all trial witnesses for their trial testimony. *Id.* at 335–36. And § 1983 incorporated the then-existing common law doctrine of absolute immunity for trial witnesses. *Id.* at 334. The Supreme Court recognized the dangers of conferring

8

absolute immunity on police officers for perjured testimony, but reasoned that the witness-immunity doctrine did not draw a distinction between private persons and police officers. *Id.* at 342. Also, exposing officers to § 1983 due-process claims for money damages "might well impose significant burdens" on law enforcement, given the diversion of resources arising from suits filed by "a disgruntled defendant," *id.* at 343–44 (cleaned up). Anything less than absolute immunity "would disserve the broader public interest." *Id.* at 345.

The key question in this case, then, is whether Walker premises the due process claim on already-fabricated evidence or solely on the officers' perjury testimony itself. Walker himself provides the answer: he insists that he is relying only on the *trial testimony* that Officers Diblich and Ohle gave about Walker's alleged on-scene confession. Pl.'s Resp. at 4–5. Walker is *not* premising the due process claim here on the arrest report itself—nor can he, because the arrest report was not admitted at trial or otherwise used to refresh either officer's memory during the trial. Individual Def. Br. at 7 (asserting, without contradiction from Walker, that the police reports were not introduced at trial); *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (holding that a due process evidence-fabrication claim failed because the evidence was not admitted at trial); *see also* Pl.'s Resp. Because Walker only challenges the admission of Officers Diblich and Ohle's trial testimony, the evidence-fabrication claim must fail. Like the officers in *Briscoe*, the officers' trial testimony is protected by absolute immunity.

9

Walker sounds the alarm that a decision against him is the equivalent of "adopt[ing] a rule of law that [officers] are free to fabricate evidence during a police investigation … so long as their written documentation of that fabricated evidence is not directly introduced at trial." Pl.'s Resp. at 11. But this criticism rings hollow. First, it is not surprising that a required element of a fabricated-evidence claim is that the evidence indeed is introduced at trial, or at least introduced into a prosecution in some way that deprives the accused of liberty (like pretrial detention). If the evidence is not relied on by the prosecution in any way, then—as disconcerting as it is *anytime* the police create a false report—there simply is no deprivation of liberty. Second, Walker was free to advance a *Brady* claim, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), without running headlong into absolute immunity. The accused may have an actionable *Brady* claim if a police officer suppresses (that is, does not disclose) evidence of the fabrication. *See Patrick II*, 974 F.3d at 834–35; *Avery*, 847 F.3d at 439–43; *Newsome v. McCabe*, 256 F.3d 747, 749–50 (7th Cir. 2001). Here, obviously Officers Diblich and Ohle did not disclose to Walker that they knowingly falsified the purported on-scene confession. That information was obviously exculpatory, and indeed would also have been impeachment against the officers required to be disclosed under *Giglio v. United States*, 405 U.S. 150, 154 (1972). But, for some reason, Walker expressly waived any claim under *Brady*, 03/31/2022 Order at 4–5 (citing the Plaintiff's dismissal-motion response brief, R. 24 at 2), and did not advance any kind of *Giglio* claim. Far from creating an absurd result, this case serves as a reminder of the importance of the party-presentation principle. *See United States v. Sineng-Smith*,

10

590 U.S. 371, 375–76 (2020). Lastly, it is worth noting that absolute immunity from money damages actions under § 1983 does not protect against criminal prosecution. *Briscoe*, 460 U.S. at 341 n.26. In no way does the outcome here give free license to officers to fabricate evidence.

### 2. Conspiracy

Officers Diblich and Ohle are also entitled to summary judgment on Walker's claim that they conspired to give perjured testimony at trial. The Seventh Circuit has held that a witness cannot be held liable under § 1983 for conspiring to commit an act—giving perjured testimony—for which the witness is protected by absolute immunity. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992). This is so because a "person may not be prosecuted for conspiring to commit an act that he may perform with impunity." *Id.*[4] The conspiracy claim thus fails as a matter of law because the underlying substantive claim fails.

### 3. Failure to Intervene

Similarly, the failure-to-intervene claim fares no better than the conspiracy claim. Typically, to overcome summary judgment on a failure-to-intervene claim, a plaintiff must point to record evidence to show that officers knew that a constitutional violation was committed and had a realistic opportunity to prevent it. *Yang v. Hardin*,

---

[4]It is worth noting that the factual argument presented by Officers Diblich and Ohle was unconvincing, that is, there was insufficient factual evidence of a conspiracy. *See* Def. Br. at 12. But viewing the evidence in the light most favorable to Walker, a reasonable jury could have readily inferred a conspiracy based on the simple fact that neither officer could sustain the story of the allegedly bogus confession without the other officer's support.

11

37 F.3d 282, 285 (7th Cir. 1994). Here, however, Officers Diblich and Ohle enjoy absolute immunity for the underlying perjury claim. The underlying act did not give rise to a constitutional violation, so the officers had nothing to prevent. *See Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). So they are entitled to judgment on the corresponding failure-to-intervene claim.

### 4. Indemnification

Finally, the City is entitled to judgment as a matter of law on the indemnification claim because the claims against the individual officers have failed. The City cannot be held vicariously liable for the actions of the officers if the officers are not liable themselves. *See* 745 ILCS 10/2-109; 747 ILCS 10/9-102; *McQueen v. Green*, 202 N.E.3d 268, 280 (Ill. 2022).

### IV. Conclusion

The Defendants' motion for summary judgment on the remaining claims is granted. A final judgment shall be entered.

ENTERED:


_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge


DATE: January 30, 2025

12